PER CURIAM.
The plaintiff, David McVay, appeals from a judgment in favor of the defendants, the Civil Service Board of the City of Muscle Shoals and its five members; Charles R. Mitchell, individually and as mayor of the City of Muscle Shoals; and Dickey G. Lesley, individually and as fire chief of the City of Muscle Shoals. McVay brought an action seeking a judgment declaring the rights, duties, and liabilities of the parties and seeking injunctive relief. The circuit court found in favor of the defendants and denied McVay’s requested relief. On appeal, McVay argues that the circuit court erred in not finding that the Board had acted arbitrarily and capriciously and in violation of applicable law.
The Board posted notice that it was accepting applications for promotion to the rank of fire captain. The description of the job was posted alongside the notice. Three men who were currently lieutenants in the fire department submitted applications for the promotion — David McVay, Ken Black-stock, and Larry Hovater. McVay had been with the Muscle Shoals Fire Department for 20 years and had held the rank of lieutenant for 9 years. Blackstock had been with the department for 14 years and had held the rank of lieutenant for less than 1 year. Ho-vater had been with the department for 22 years and had held the rank of lieutenant for 10 years.
At a meeting on April 8, 1996, the Board interviewed the three applicants. At that meeting, a letter from Chief Lesley, recommending Ken Blackstock, was read into the record. Blackstock is the brother-in-law of Chief Lesley. The Board then entered into an executive session to discuss the “qualifications and character” of the applicants. After reconvening its public meeting, the Board voted to promote Blackstock to the position of captain.
McVay filed a written grievance with his department head, Chief Lesley, on April 17, 1996, charging that “properly established staffing procedures were not followed when [McVay] was by-passed for promotion to captain.” The Chief found the matter “not to be a grievance.” In accordance with the grievance rules and regulations, McVay proceeded to file grievances first with the mayor and then with the Board. In each instance the matter was deemed “nongrievable.” McVay then filed a complaint for a declaratory judgment, in the Circuit Court of Colbert County.
Act No. 95-207, Ala. Acts 1995, effective on June 20, 1995, established a new civil service system for the City of Muscle Shoals. Section 13 of that act entitles any party aggrieved by a final decision of the board to a circuit court review of that decision. Section 13 also provides the standard by which the circuit court is to review a decision of the board:
“The court shall affirm the decision of the board unless it finds that the substantial rights of the petitioner have been prejudiced because the final decision of the board included any of the following: (1) unsupported by substantial evidence in the *895 record submitted; (2) in excess of the authority conferred by this act on the board; (3) violative of constitutional provisions; (4) arbitrary or capricious; or (5) affected otherwise by substantial error or injustice.”
“The decision of an administrative agency will be affirmed unless the appellant can prove that the agency acted in an arbitrary and capricious manner or failed to comply with the applicable law.” Ex parte Personnel Board for Mobile County, Alabama, 637 So.2d 888, 889 (Ala.1994) (citing McRae v. General Retirement System for Employees of Jefferson County, 536 So.2d 71 (Ala.Civ.App.1988)).
The evidence is unclear as to whether certification by the state as Fire Instructor I is a requirement for the job of fire captain in Muscle Shoals.[1] Nevertheless, Blackstoek indicated on his application that he had such certification, when in fact he did not. Furthermore, when he recommended Blackstoek to the Board for promotion to captain, Chief Lesley knew that Blackstoek had failed the course and did not have the certification. Some members of the board testified that they relied on the Chiefs recommendation in making their decision and that it would have made a difference if they had known of the false statement regarding certification.
Mere completion of the Fire Instructor I course and state certification as a Fire Instructor I are two very different things. Assistant Fire Chief Ronnie Moates testified that everyone receives a course completion certificate anytime they complete a course and that this holds true for all courses offered. All this means is that they went through the course, whether or not they passed it. To obtain the certification, one must, after completing the course, take and pass a separate test.
On Blackstoek’s résumé, the first thing listed in the section entitled “certifications” was “Fire Instructor I.” However, Black-stock was never certified as a Fire Instructor I. The certificate attached to Blackstock’s application is merely a course completion certificate. If Blackstoek were certified, he would have a different certificate that included a state certification number. The difference is apparent when Blackstock’s certificate is compared to the state certificate attached to McVay’s application. From the testimony of Chief Lesley, Assistant Chief Moates, and Lt. McVay, it seems that this distinction was well known to anyone who works in the Department or who has participated in any of these courses.
Section 5.8.3.2 of the “City of Muscle Shoals Civil Service Board Personnel Policies and Procedures” provides:
“[Department head recommendations and all employee applications along with other relevant employee information and records will be provided to the civil service board to evaluate and rank applicants for the vacancy.”
(Emphasis added.) Because the information regarding Blaekstoek’s certification was not provided, the Board was not able to make an informed decision based on all of the relevant information.
The Chief wrote the following letter to the Board recommending Blackstoek for promotion to the rank of captain:
“I am writing concerning the promotion now open within the Muscle Shoals Fire Department. I would like to recommend Lieutenant Ken Blackstoek be promoted to Fire Captain to fill the vacant Captain slot. Thank you for your consideration in this matter.”
At trial, after testifying that whether one has Fire Instructor I certification is significant in determining who is going to be promoted to captain, the Chief admitted that he knew, when he wrote this letter, that Blackstoek had failed the Fire Instructor I course:
“Q. And would it be significant to you if Mr. Blackstoek said that he was certified as a Fire Instructor I and, in fact, he is not state certified as a Fire Instructor I?
“A. I don’t know if he did.
*896 “Q. Do you know that he went to the school at UNA [an apparent reference to the University of North Alabama]?
“A. Yes, sir.
“Q. Do you know that he did not pass the course?
“A. Hearsay.
“Q. You know that?
“A. Yes, sir.
“Q. That’s your job to know, isn’t it?
“A. Right.
“Q. And you know he didn’t pass it?
“A. Yes, sir.”
“Q. Do you know that in these rules and regulations of the policies and procedures that if a man is dishonest in his application, he can’t be considered for that promotion or should not be considered for that promotion?
“A. Yes, sir.
“Q. You do know that, don’t you?
“A. Yes, sir.
“Q. And you knew it then, didn’t you?
“A. Yes, sir.
“Q. And you still recommended your brother-in-law, didn’t you?
“A. No, sir.
“Q. You didn’t?
“A. Not my brother-in-law. Lieutenant [Blackstock] as a fireman.
“Q. Well, he’s your brother—
“A. He is my brother-in-law.
“Q. He is your brother-in-law?
“A. Right.
“Q. That’s right. And so when I say you still recommended your brother-in-law, that’s a correct description, isn’t it?
“A. That way, yes, sir.”
Not only did Chief Lesley write the letter of recommendation for Blackstock without mentioning that Blackstock had failed the course, but he also was present at the meeting of the Board when the promotion was decided, and he failed to mention it then, as well. There was testimony that the Chief was asked if there was anything the Board needed to know that was not in the applications and that the Chief still did not disclose this information — information that he has admitted was significant in regard to the Board’s determination of who was to be a captain.
Rev. A.J. Mayes, who had been a member of the Board for four years, testified:
“Q. And did you ask the Chief specifically regarding the application of Mr. Blackstock, whether under ‘certifications’ Mr. Blackstock writes ‘Fire Instructor F— did you ask Mr. — or the Chief Dickey Lesley, whether he was certified as a Fire Instructor I?
“A. Not specifically.
“Q. You didn’t?
“A. No. We asked if there is anything about each applicant that we needed to know that we did not have in their applications and so forth.
[[Image here]]
“Q.... If you had learned, had you asked the question of any source, whether it is a correct statement that Mr. Black-stock is certified as a Fire Instructor I and learned that he was not, would your decision have been different?
“A. Very possibly. If there was a lie told, of course it would.
“Q. But you didn’t ask the question?
“A. No.
“Q. With regard to Mr. McVay and his certifications, did you ask whether he was certified as an instructor one — Fire Instructor I?
“A. No. I took it that upon Chief Lesley looking at the applications, and we looking at them, if he found anything that was untrue, I was sure that he would have brought it forward.
“Q. You’re sure of that?
“A. Yes.
“Q. Did you ask Chief—
“A. No.
“Q. —Chief Lesley whether he found any statements in ... any of the applications that were not correct?
“A. The question is usually asked ‘Is there anything that we need to know that, you know, that we don’t know.’ In other words, as to say, ‘[Are] there any state *897 ments that we — that you know about, as working with these men, that we don’t know that you feel we need to know?’
“Q. And what was the answer?
“A. ‘No.’
“Q. Nothing?
“A. That’s correct.”
(Emphasis added.)
When Glenn Nuby, chairman of the Board, was questioned as to how the Board learned of a candidate’s past performance, he responded:
“If it comes from the department head, we kind of consider that — myself—I do, anyway — that that’s got to be a good past performance on that employee or we wouldn’t be getting a letter of recommendation.”
Three of the Board members testified that they assumed that the applications and ré-sumés of the applicants were true and correct. Board member Donna Patrick and Chairman Nuby testified that they assumed that there would be something in the rules and regulations that would disqualify Black-stock from receiving a promotion if he had made a misrepresentation in his application. The rules and regulations do, in fact, give the Board the option of excluding from consideration someone who intentionally makes a false statement on an application. Section 5.3.2 provides that “the board may refuse to examine or after examination place on an eligibility list the name of any applicant ... who has intentionally made a false statement of any material fact or attempted to practice any deception or fraud in his application or in his examination.” The evidence shows that had the Board known of the deceptive statement on Blackstock’s résumé, it might well have exercised its option under § 5.3.2 and thus might have reached a different result. At the least, the Board should have been given that choice.
The circuit court erred in refusing to set aside the actions of the Board in this case. Evidence at trial indicated that certain information had been kept from the Board during its consideration of the applications for promotion to captain. Several of the Board members indicated that it would have made a difference if they had known this information. In light of that evidence, the circuit court should have found that the Board’s decision was affected by substantial error and, thus, that it “failed to comply with the applicable law.” Ex parte Personnel for Mobile County, 637 So.2d at 889. We reverse the judgment of the circuit court and remand this ease for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
MADDOX, J., dissents.

. The plaintiff argues that such certification is required because the job description for captain lists "completion of state fire certification training” as a "characteristic” for the job. However, the evidence did not prove or disprove this argument.